**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MELVIN JOHNAKIN | : | |
| | : | |
| Plaintiff, | : | Case No. 2:20-CV-03787 |
| | : | |
| vs. | : | |
| | : | |
| TOM WOLF, in his official capacity as Governor of the Commonwealth of Pennsylvania | : : : : | |
| | : | |
| and | : | |
| | : | |
| KATHY BOOCKVAR, in her official capacity as Secretary of the Commonwealth of Pennsylvania | : : : : | |
| | : | |
| and | : | |
| | : | |
| JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions | : : : : | |
| | : | |
| Defendants. | : | |

**COMPLAINT AND REQUEST FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**Nature of the Case**

1.  This is an action to declare unconstitutional, enjoin and/or modify the Commonwealth of Pennsylvania's in-person signature collection and witnessing requirements for minor political party and political body candidates in Pennsylvania seeking to qualify for the November 3, 2020 general election in light of the current public health emergency caused by the coronavirus pandemic (COVID-19) and the Governor's emergency orders effectively shutting down the Commonwealth.

**Signature Requirements for Candidates**

2. Pennsylvania classifies general-election candidates into three groups: (a) those affiliated with a "Political Party"; (b) those affiliated with a "Minor Political Party"; and (c) those affiliated with a "Political Body." *See* 25 Pa C.S.A. § 2831(a) – (c) and 25 Pa. C.S.A. § 2872.2(a).

3. An organization qualifies as a "Political Party" if, during the most recent general election, one of its candidates polled at least two percent of the largest entire vote cast in each of at least ten counties and polled a total vote in the state equal to at least two percent of the largest entire vote cast for any elected candidate. *See* 25 Pa. C.S.A. § 2831(a). To date, only the Republican Party and Democratic Party are classified as "Political Parties" as defined by Pennsylvania statute.

4. A "Minor Political Party" is a political party that received less than 15 percent of the total statewide registration for all political parties. *See* 25 Pa. C.S.A. § 2872.2(a). "Political Bodies" are organizations that did not have a candidate who crossed the two-percent threshold in the last election. *See* Constitution Party of Pennsylvania v. Cortes, 824 F.3d 386, 390 (3d Cir. 2016) (*citing* Rogers v. Corbett, 468 F.3d 188, 190-91 (3d Cir. 2006)).

5. Political Parties select their nominees by means of taxpayer-funded primary elections. *See* 25 Pa. C.S.A. § 2861(a); 25 Pa. C.S.A. § 2645(a) ("The county commissioners or other appropriating authorities of the county shall appropriate annually, and from time to time, to the county board of elections of such county, the funds that shall be necessary for the maintenance and operation of the board and for the conduct of primaries and elections in such county, including…all ballots and other primary and election supplies required by this act").

6. Candidates seeking the nomination of a Political Party must submit "nomination petitions" with a specified number of signatures of voters registered with their party in order to be

placed on that party's primary election ballot. *See* 25 Pa. C.S.A. § 2867. The winning candidates in the primary election automatically qualify for placement on the ballot in the general election. *See* 25 Pa. C.S.A. § 2862.

7. "Political Bodies" and "Minor Political Parties" (and voters registered as such) are not able to participate in Pennsylvania's primary election. Instead, candidates of these parties do not circulate "nomination *petitions*", but rather, must circulate "nomination *papers*" and obtain the required number of signatures from voters in order to appear on the general election ballot. *See* 25 Pa. C.S.A. § 2872.2(a) – (c).

8. Currently, there are no Minor Political Parties in Pennsylvania.

9. The signature requirements for "Political Parties" (*i.e.* the Republican Party and the Democratic Party) are specified in 25 Pa. C.S.A. § 2872.1 (*e.g.* President of the United States: 2,000 signatures; Governor: 2,000 signatures, including at least one hundred from each of at least ten counties; Representative in the General Assembly: 300 signatures).

10. Until 2016, the signature requirement for "Minor Political Parties" and "Political Bodies" fluctuated from year to year because it was defined as "two per centum of the largest entire vote cast for any elected candidate in the State at large at the last preceding election at which State-wide candidates were voted for" and for all other positions, the signature requirement was set at "two per centum of the largest entire vote cast for any officer, except a judge of a court of record, elected at the last preceding election in said electoral district for which said nomination papers are to be filed, and shall be not less than the number of signers required for nomination petitions for party candidates for the same office" 25 Pa. C.S.A. § 2911(b).

11. In 2016, the Third Circuit Court of Appeals affirmed the judgment of this Court holding § 2911(b) unconstitutional as applied in combination with 25 Pa. C.S.A. § 2937. *See*

Constitution Party of Pennsylvania v. Cortes, 824 F.3d 386, 389 (3d Cir. 2016) ("We simply hold that what the Commonwealth cannot do is avoid the clear import of the District Court's order in this case: that §§ 2911(b) and 2937, when enforced together, are unconstitutional as applied to the Aspiring Parties"). Accordingly, Chief Judge Lawrence F. Stengel ordered, *inter alia*, that the signature requirements for Political Bodies be set at a specified number for all offices. *See* Order, Constitution Party v. Aichele, No. 12-2726, Doc. No. 115 (E.D. Pa. February 1, 2018) (attached as Exhibit A).

12. As a result, this Court's February 1, 2018 order in Constitution Party v. Aichele established the signature requirements listed therein which now apply to Political Body candidates. *See* Exhibit A.

13. Pursuant to this Court's February 1, 2018 order, the signature requirement for a Political Body candidate seeking the position of Representative in Congress varies based on the Congressional District, between 1,800 for District 12 and 5,753 for District 3. *See* Exhibit A and Pennsylvania Department of State, Minor Political Party and Political Body Signature Requirements for Statewide Offices for General Election – November 3, 2020, attached hereto as Exhibit B.

14. Candidates of their respective Political Body may collect signatures from the tenth Wednesday prior to the primary until the deadline for filing their nomination papers, which is the second Friday subsequent to the primary. 25 Pa. C.S.A. § 2913(b) – (c). These dates were revised pursuant to the enactment of Act 2020-12 to be February 19, 2020 and August 3, 2020.

**PARTIES**

15. Plaintiff Melvin Johnakin is an independent candidate for the office of Representative in Congress for the 3rd Congressional District who seeks to qualify for the Commonwealth's November 3, 2020 General Election ballot.

16. Defendant Tom Wolf is the Governor of Pennsylvania and possesses emergency power to act during emergencies and times of crisis, including the COVID-19 pandemic. Plaintiff asserts his claims against Governor Wolf is his official capacity only. Governor Wolf's address is: Office of the Governor, 508 Main Capital Building, Harrisburg, PA 17120.

17. Defendant Kathy Boockvar is the Secretary of the Commonwealth of Pennsylvania and serves as the head of the Department of State, "which promotes the integrity of the electoral process." The Secretary of the Commonwealth is Pennsylvania's Chief Election Official. Additionally, the Secretary of the Commonwealth determines the forms of nomination petitions and papers, expense accounts and all other forms and records and determines the sufficiency of nomination petitions, certificates and papers of candidates for President of the United States, presidential electors, United States senators, representatives in Congress and all State offices, including senators, representatives and judges of all courts of record, and delegates and alternate delegates to National Conventions and members of State committees. 25 Pa. Stat. Ann. § 2621(a), (d). Plaintiff asserts his claims against Secretary Boockvar in her official capacity only. Secretary Boockvar's address is 302 North Office Building, 401 North Street, Harrisburg, PA 17120.

18. Defendant Jonathan Marks is the Deputy Secretary for Elections and Commissions for the Bureau of Commissions, Elections and Legislation. Deputy Secretary Marks oversees the Commonwealth's electoral process, campaign finance, voter registration and office of notary public, commissions and legislation. Plaintiffs assert their claims against Deputy Secretary Marks

in his official capacity only. Deputy Secretary Marks' address is 210 North Office Building, Harrisburg, PA 17120.

19. At all times relevant to this action, Defendants were engaged in state action under color of state law.

20. Defendants are being sued in their official capacities for declaratory and injunctive relief under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, as well as costs and attorney's fees under 42 U.S.C. § 1988(b).

**JURISDICTION**

21. Jurisdiction in this case is predicated on 28 U.S.C. § 1331, this being a case arising under the Constitution of the United States and 42 U.S.C. § 1983.

**VENUE**

22. Venue is proper in this District under 28 U.S.C. 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the Eastern District of Pennsylvania.

**FACTS**

**The COVID-19 Pandemic and Pennsylvania's Response**

23. In December 2019, an outbreak of respiratory disease caused by a novel Coronavirus emerged in Wuhan, China. The respiratory disease caused by the novel Coronavirus, now known as "COVID-19," is an infectious disease that is easily spread from person to person and can result in serious illness and death.

24. On January 30, 2020, after the coronavirus outbreak had spread well beyond China, the World Health Organization declared that COVID-19 constitutes a Public Health Emergency of International Concern.

25. On January 31, 2020, as a result of confirmed cases of COVID-19 in the United States, Health and Human Services Secretary Alex M. Azar, II declared a nationwide public health emergency retroactive to January 27, 2020.

26. The last day to circulate and file nomination petitions by Republican and Democratic candidates was February 18, 2020. Accordingly, Republican and Democratic candidates were not affected by Governor Wolf's subsequent "stay at home" orders or other executive orders as a result of the COVID-19 pandemic.

27. The first day for Political Body candidates to circulate and file nomination papers was February 19, 2020.

28. On February 27, 2020, the Centers for Disease Control issued guidance recommending, among other things, that members of the public practice "social distancing" and minimize close contact with others in order to slow the spread of COVID-19.

29. On March 6, 2020, Governor Wolf proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c). *See* "Proclamation of Disaster Emergency," March 6, 2020, attached hereto as Exhibit C.

30. On March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic.

31. On March 13, 2020, the President of the United States declared a national emergency (retroactive to March 1, 2020) due to the COVID-19 outbreak in the United States.

32. On March 19, 2020, Governor Wolf issued an order regarding the closure of all businesses that are not life sustaining. "No person or entity shall operate a place of business in the Commonwealth that is not a life sustaining business regardless of whether the business is open to members of the public...Enforcement actions will be taken against non-life sustaining businesses

that are out of compliance effective March 21, 2020, at 12:01 a.m." The order specifically defines "business, professional, labor, *political*, and similar organizations" as non-life sustaining (emphasis added). *See* "Order of the Governor of Pennsylvania Regarding the Closure of All Businesses that are not Life Sustaining," March 19, 2020, attached hereto as Exhibit D.

33. On March 23, 2020, Governor Wolf issued a stay at home order effective until April 6, 2020. "All individuals residing in Allegheny County, Bucks County, Chester County, Delaware County, Monroe County, Montgomery County, and Philadelphia County are ordered to stay at home except as needed to access, support, or provide life sustaining business, emergency, or government services…Individuals leaving their home or place of business to access, support, or provide life sustaining services for themselves, another person, or a pet must employ social distancing practices as defined by the Centers for Disease Control and Prevention. Individuals are permitted to engage in outdoor activities; however, gatherings of individuals outside of the home are generally prohibited except as may be required to access, support or provide life sustaining services." *See* "Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home," March 23, 2020, attached hereto as Exhibit E.

34. Between March 24, 2020 and March 31, 2020, Governor Wolf amended his March 23, 2020 stay at home order to include additional counties in Pennsylvania.

35. On March 25, 2020, Governor Wolf authorized temporary remote notarization of some documents during the Coronavirus Emergency. *See* Exhibit F attached hereto.

36. On April 1, 2020, Governor Wolf issued a statewide "stay at home order" effective until April 30, 2020. "All individuals in the Commonwealth are ordered to stay at home except as needed to access, support, or provide life-sustaining businesses, emergency, or government services…Individuals leaving their home or place of residence to access, support, or provide life

sustaining services for themselves, another person, or a pet must employ social distancing practices as defined by the Centers for Disease Control and Prevention." *See* "Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home," April 1, 2020, attached hereto as Exhibit G.

37. On April 22, 2020, Governor Wolf instituted a process to "reopen Pennsylvania" with a targeted May 8, 2020 start date. He classified counties as being in a "red phase," a "yellow phase," or a "green phase."[1]

38. The red phase maintains the stay at home orders. For counties in the "yellow phase," the stay at home order will be lifted, but "large gatherings of more than 25 [people are] prohibited…all entertainment (such as casinos, theaters) remain closed…restaurants and bars [are] limited to carry-out and delivery only." *See* Footnote 1, *supra*.

39. The Governor's website notes that Pennsylvanians should still maintain social distancing of at least six feet even in counties that are in the "yellow phase." ("All Pennsylvanians should continue to maintain social distancing even as the reopening and easing of restriction process begins. With few exceptions, Pennsylvanians should maintain a distance of six feet from each other, gatherings of more than 25 people will be prohibited, and non-essential travel should be avoided"). *See* Footnote 1, *supra*.

40. On May 1, 2020, Governor Wolf announced that 24 counties in the northwest and north-central regions of Pennsylvania will move from a "red phase" to a "yellow phase" beginning May 8, 2020.[2]

---

[1] https://www.governor.pa.gov/newsroom/gov-wolf-reopening-targeted-for-may-8-in-north-central-northwest/ and https://www.governor.pa.gov/process-to-reopen-pennsylvania/
[2] https://www.governor.pa.gov/newsroom/gov-wolf-announces-reopening-of-24-counties-beginning-may-8/

41. On May 8, 2020, Governor Wolf announced that 13 more counties, located in mostly in southwestern and southcentral Pennsylvania, will move from a "red phase" to a "yellow phase" beginning on May 15, 2020.[3]

42. On May 8, 2020, Secretary of Health Dr. Rachel Levine signed new orders extending the "stay at home" orders for "red phase" counties until June 4, 2020, including Philadelphia. *See* Exhibit H attached hereto.

43. Philadelphia County did not enter the "yellow phase" until June 5, 2020 and did not enter the "green phase" until June 26, 2020 under Pennsylvania's statewide guidelines.[4]

44. However, the City of Philadelphia imposed additional guidelines on the local level and did not begin its initial "green phase" of reopening until July 3, 2020.[5]

45. Even though Philadelphia has entered the "green phase", Plaintiff will have lost over 14 weeks of signature collection time allotted to him to collect signatures in person under Pennsylvania law.

46. According to the Centers for Disease Control, older adults (particularly those over 65) and people of any age who have serious underlying medical conditions (including asthma, heart disease, cancer, and diabetes) may be at higher risk for severe illness from COVID-19.

**Gathering Signatures for Nomination Papers Is Both Illegal and Practically Impossible Under Pennsylvania Law**

47. Petitioning to qualify candidates and Political Bodies for Pennsylvania's November 3, 2020 general election ballot is not defined as an "essential" activity under Governor Wolf's

---

[3] https://www.governor.pa.gov/newsroom/gov-wolf-announces-13-counties-will-move-to-yellow-phase-ofreopening-on-may-15/

[4] https://www.governor.pa.gov/newsroom/reopening-phase-orders-updated-to-include-12-additional-counties-moving-to-green-on-june-26/

[5] https://www.phila.gov/guides/reopening-with-care/reopening-guidance/?mc_cid=c9c3c9a822&mc_eid=c1d0b8ab34

March 23 stay at home order, or any subsequent amendments thereto. The public health emergency caused by COVID-19 and the various "stay at home" orders issued by Governor Wolf make it unlawful and practically impossible to gather signatures for nomination papers in Pennsylvania. The Governor's website stated that "[l]aw enforcement remains focused on achieving voluntary compliance through education, but citations are possible for violators depending on the specific circumstances of an investigation."[6] Further, government officials at virtually every level are directing people to stay at home, to practice "social distancing," and to avoid being within six feet of other people.

48. The Governor's new remote rules for notaries and witnesses demonstrate that requiring in-person contact to satisfy Pennsylvania's petitioning requirements is not presently possible. Further, it will remain difficult if not practically impossible to collect signatures after emergency measures are lifted, because personal contact with large numbers of people during the COVID-19 pandemic will continue to present an unacceptable risk to the public health.

49. Gathering signatures during the COVID-19 outbreak endangers not only the health but also the lives of petition-circulators, potential signers, and the public at large.

50. Even if it were legal and/or physically feasible to gather signatures during the current public health emergency, petition-circulators will be unable to gather signatures because there are fewer people congregating in public places and fewer people are likely to open their door to strangers who come knocking.

---

[6] https://www.governor.pa.gov/newsroom/gov-wolf-announces-13-counties-will-move-to-yellow-phase-ofreopening-on-may-15/

**Safer and Less Burdensome Alternatives Are Available**

51. Pennsylvania adopted its in-person signature-gathering procedure in 1937, and it has not substantially updated or improved the procedure in the 83 years since.

52. Collecting signatures by hand on paper nomination petitions is inherently burdensome, labor-intensive and inefficient as a means of demonstrating voter support. Many signatures are invalidated due to illegibility, missing information and other technical defects. This obliges candidates and parties to collect 25-50 percent more signatures than the requirement, to account for those that may be invalidated, which needlessly increases the burden and expense of demonstrating the requisite modicum of voter support.

53. Pennsylvania has adopted the Pennsylvania Electronic Transactions Act (a version of which all states have enacted), providing that electronic signatures must be given legal effect for purposes of most contracts and many other legal instruments. *See* 73 P.S. § 2260.101 et seq.

54. Arizona has already implemented online petitioning. "In Arizona, candidates are required to obtain a minimum number of petition signatures to appear on a ballot. Voters interested in assisting Statewide and Legislative candidates can now sign a petition electronically". *See* Arizona Secretary of State: Citizen Clean Elections Commission, Welcome to E-Qual[7]

55. On March 19, 2020, New Jersey's Governor by executive order implemented online petitioning and signature collection for candidates in response to the coronavirus pandemic. "The Secretary of State, county clerks, and municipal clerks shall also accept petitions with signatures collected via an online form created by the Secretary of State, which shall be available for use by Thursday, March 19, 2020". *See* Executive Order No. 105, March 19, 2020[8]

---

[7] https://apps.azsos.gov/equal/
[8] https://www.state.nj.us/state/elections/assets/pdf/candidate/EO-105.pdf

56. Denver, Colorado and the District of Columbia have also implemented a web-enabled application called E-Sign, which enables petition circulators to collect signatures on electronic tablets. These web-based platforms are integrated with the jurisdiction's voter rolls, and thus validate signatures automatically, eliminating the need to collect more signatures than the statutorily required number.

57. In Vermont, the legislature passed a bill that eliminated petition requirements for the 2020 general election. "[A] person shall not be required to collect voter signatures in order to have the person's name placed on any ballot in the year 2020, including on any local election ballot. Accordingly, a person shall not be required to file a primary petition as a major party candidate for the primary, a statement of nomination as an independent candidate for the general election, or a petition as a candidate for a local election, as those contain the voter signatures." Vermont Act 92 of 2020, Sec. 2(a).[9]

58. In Illinois, Chief Judge Pallmeyer of the United States District Court for the Northern District of Illinois granted a preliminary injunction to minor party plaintiffs in a case based on similar facts and circumstances as this one. *See* Libertarian Party of Illinois, et al. v. Pritzker, et al., No. 1:2020cv02112-Document 26 (N.D. Ill. 2020). Pursuant to the Court's order, the minor party and independent candidate plaintiffs are qualified for placement on Illinois' November 3, 2020 general election ballot for each office for which the respective party or candidate qualified for placement on Illinois' general election ballot in either 2018 or 2016, and Illinois' petition requirements for such offices are enjoined. *See id.*

---

[9] https://legislature.vermont.gov/Documents/2020/Docs/ACTS/ACT092/ACT092%20As%20Enacted.pdf

59.     For all other minor party and independent candidates, the Illinois Court reduced the signature requirements to 10 percent of the signature requirement specified in the State of Illinois 2020 Candidate's Guide issued by the Illinois State Board of Elections.

60.     Additionally, the Illinois Court: (1) enjoined the in-person signature requirement, circulator statement, and notarization requirement for minor party and independent candidates; (2) enjoined the requirement that minor party or independent candidates must file the "original sheets which have been signed by the voters and by the circulator, and not photocopies or duplicates of such sheets"; (3) ordered that a physical "wet" signature is permitted but not required on the candidate's petition, such that petition signers may physically sign a copy of a candidate's petition, or they may electronically sign the petition using a finger or a device such as a computer mouse or stylus; and (4) extended the filing deadline for new political party and independent candidates from June 22, 2020 to August 7, 2020. *See id*.

## Impossibility of Circulation by Candidates

61.     Plaintiff and his supporters have been undertaking their best efforts in collecting signatures in order to qualify candidates for Pennsylvania's November 3, 2020 general election ballot, while at the same time complying with the orders and directives of the Commonwealth of Pennsylvania and/or City of Philadelphia issues in response to the COVID-19 pandemic.

62.     Such signatures must be collected in-person and witnessed in-person under Pennsylvania law.

63.     In the 3rd Congressional District, 38%-48% of the population are senior citizens, of which a majority have pre-existing medical conditions. Of this population, 35% are low income and reside in public housing. Plaintiff has supported this population in many ways over the past 22 years, and many persons in this population desire to support Plaintiff in the general election.

64. As a result of the orders and directives issued in response to the COVID-19 pandemic prohibiting non-essential solicitation, Plaintiff and his supporters have encountered significant difficulty with and have been unable to have in-person interaction with the senior citizen population of the 3rd Congressional District to secure signatures.

65. Political Body candidates had only one month to collect signatures before Governor Wolf issued his "stay at home" orders. Because of these expansive emergency orders issued by the Governor, the public health concerns, measures and protocols described herein, it is not possible for the Plaintiff and his supporters to gather additional nomination paper signatures other than the miniscule number that may be collected within circulators' separate households.

66. Substantive petition gathering, in public places, or door-to-door, is not presently possible in Pennsylvania for Political Body candidates and has been severely hampered by the orders and directives issued in response to the COVID-19 pandemic.

67. Signatures collected to support Political Body candidates must be filed not later than August 3, 2020 with the appropriate elections officials in Pennsylvania in order for those candidates to qualify for the November 3, 2020 general election ballot.

68. Because of the Governor's orders issued between March 19, 2020 and the present and public health concerns, measures and protocols described herein, it is impossible for Political Body candidates such as Plaintiff to collect the required number of signatures in-person and properly witness them as required by Pennsylvania law before the August 3, 2020 deadline for Political Body candidates.

69. At present, Defendants continue to enforce signature requirements that were invalidated in <u>Constitution Party v. Aichele</u>. The Pennsylvania Department of State has posted the signature requirements online based on an order this Court entered on June 30, 2016. *See*

Pennsylvania Department of State, Minor Political Party and Political Body Signature Requirements for Statewide Offices for General Election – November 3, 2020, attached hereto as Exhibit B.

70. The correct signature requirements, however, are established by this Court's February 1, 2018 order, which expressly supersedes the Court's June 30, 2016 order. *See* Exhibit A.

### Injury-in-Fact Caused to Plaintiff

71. Pennsylvania law, together with the coronavirus outbreak, resulting COVID-19 Pandemic and the Governor's orders, causes injury-in-fact to Plaintiff and Plaintiff's First and Fourteenth Amendment rights.

72. Plaintiff's injuries are fairly traceable to the Pennsylvania laws requiring in-person signature collection for candidates between February 19, 2020 to August 3, 2020 and the Governor's orders described herein.

73. This Court has the power to properly redress Plaintiff's injuries by issuing prospective injunctive and declaratory relief prohibiting enforcement of Pennsylvania's signature requirement for candidates for office for the November 3, 2020 general election.

74. This Court may properly redress Plaintiff's injuries by directing Defendants to accept for the November 3, 2020 general ballot candidates such as Plaintiff running for office without requiring the supporting signatures from voters otherwise required by Pennsylvania law.

### FIRST CAUSE OF ACTION

### FIRST AMENDMENT

75. Plaintiff incorporates herein by reference each of the foregoing paragraphs and allegations as though the same were set forth in full herein at length.

76. Under present circumstances, Pennsylvania's ballot access requirements for Minor Political Parties and Political Bodies violate rights guaranteed to Plaintiffs by the First and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

77. A real and actual controversy exists between the parties.

78. Plaintiff has no adequate remedy at law other than this action for declaratory and equitable relief.

79. Plaintiff is suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

## SECOND CAUSE OF ACTION

## FOURTEENTH AMENDMENT EQUAL PROTECTION CLAUSE

80. Plaintiff incorporates herein by reference each of the foregoing paragraphs and allegations as though the same were set forth in full herein at length.

81. Under present circumstances, Pennsylvania's ballot access requirements for Minor Political Party and Political Bodies violate rights guaranteed to Plaintiffs by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983.

82. A real and actual controversy exists between the parties.

83. Plaintiff has no adequate remedy at law other than this action for declaratory and equitable relief.

84. Plaintiff is suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

## THIRD CAUSE OF ACTION

## FOURTEENTH AMENDMENT DUE PROCESS CLAUSE

85.     All previous paragraphs and allegations are incorporated herein.

86.     Under present circumstances, Pennsylvania's emergency "stay at home" orders preventing in-person meetings, coupled with the Pennsylvania Department of State's signature requirement for Minor Parties and Political Bodies that is contrary to the signature requirement mandated in Constitution Party v. Aichele (*see* Exhibit A), have so altered Pennsylvania's ballot access requirements for Pennsylvania's November 3, 2020 election that the Defendants have not only made it impossible for the Plaintiff to comply with existing Pennsylvania law, they have changed Pennsylvania's ballot requirement in the midst of the 2020 election and thereby violated rights guaranteed to Plaintiff by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983.

87.     A real and actual controversy exists between the parties.

88.     Plaintiff has no adequate remedy at law other than this action for declaratory and equitable relief.

89.     Plaintiff is suffering irreparable harm as a result of the violations complained of herein, and that harm will continue unless declared unlawful and enjoined by this Court.

## DEMAND FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

1.      Assume original jurisdiction over this case;

2.      Issue a temporary restraining order and/or preliminary injunction (i) prohibiting enforcement of Pennsylvania's signature requirements for Minor Party and Political Body candidates for office for Pennsylvania's November 3, 2020 general election;

(ii) directing Defendants to accept Plaintiff's nominating papers for the November 3, 2020 general election without requiring supporting signatures from voters; and (iii) directing Defendants to place Plaintiff's name on the Pennsylvania November 3, 2020 general election ballot;

      3.      Issue a declaratory judgment holding that, in light of the current public health emergency caused by the novel coronavirus and executive orders requiring that Pennsylvania citizens stay at home, Pennsylvania's supporting signature requirements for Minor Political Party and Political Body candidates for office cannot be constitutionally enforced under the First and Fourteenth Amendments, that Defendants must accordingly accept Plaintiff's nomination papers for the November 3, 20202 general election ballot without requiring supporting signatures from voters, and that Defendants must accordingly place Plaintiff's name as a candidate on the Pennsylvania November 3, 2020 general election ballot;

      4.      Issue a permanent injunction (i) prohibiting enforcement of Pennsylvania's supporting signature requirement for candidates for office for Pennsylvania's November 3, 2020 general election; (ii) directing Defendants to accept Plaintiff's nomination papers for the November 3, 20202 general election ballot without requiring supporting signatures from voters; and (iii) directing Defendants to place Plaintiff's name on the Pennsylvania November 3, 2020 general election ballot;

      5.      Order Defendants to pay to Plaintiff his costs and reasonable attorney's fees under 42 U.S.C. § 1988(b); and

      6.      Retain jurisdiction over this matter and order Defendants to provide to Plaintiff any additional relief the Court deems just and appropriate under the circumstances.

                                                     Respectfully submitted,

                                                     VAN DER VEEN, O'NEILL, HARTSHORN & LEVIN

                                                       /s/ Michael T. van der Veen

DATE: 8/4/2020                BY:    _____

                                                       Michael T. van der Veen, Esquire
                                                     Attorney for Plaintiff
                                                     Attorney ID No. 75616
                                                     1219 Spruce Street
                                                     Philadelphia, PA 19107
                                                     P: 215-546-1000
                                                     F: 215-546-8529
                                                     E: mtv@mtvlaw.com