# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE CONSTITUTION PARTY OF PENNSYLVANIA, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CAROL AICHELE, et al., | : | |
| | : | |
| Defendants. | : | NO. 12-2726 |

### ORDER

**AND NOW**, this 1st day of February, 2018, upon consideration of the Third Circuit's

opinion in <u>Constitution Party of Pa. v. Cortes</u>, 877 F.3d 480 (3d Cir. 2017) and the parties' joint

proposed modifications to this court's June 30, 2016 order (Doc. No. 97), **IT IS HEREBY**

**ORDERED** that the parties' request for this court to adopt their proposed modifications is

**GRANTED** as follows:

This order shall replace the order I issued on June 30, 2016. (Doc. No. 97.)

Until such time as the Pennsylvania Legislature enacts a permanent measure amending or

modifying the process to place the plaintiff political bodies on the general election ballot and this

change is signed by the Governor of Pennsylvania, the following rules shall apply to the plaintiff

political bodies with respect to securing placement of their candidates on the general election

ballot in Pennsylvania.

1.      Candidates for the offices listed below shall present to the Secretary of the

Commonwealth every August 1 nomination papers containing at least as many valid signatures

of qualified electors of the state or the electoral district, as the case may be, as listed below:

a.  President of the United States: Five thousand.

b.  United States Senate: Five thousand.

c.  Governor: Five thousand.

d.  Lieutenant Governor: Two thousand five hundred.

e.  Treasurer: Two thousand five hundred.

f.  Auditor General: Two thousand five hundred.

g.  Attorney General: Two thousand five hundred.

h.  Justice of the Supreme Court: Two thousand five hundred.

i.  Judge of the Superior Court: Two thousand five hundred.

j.  Judge of the Commonwealth Court: Two thousand five hundred.

k.  For any other office to be filled by the vote of the electors of the state at large: Two thousand five hundred.

2.  Candidates for non-statewide offices shall present to the Secretary of the Commonwealth by August 1 nomination papers containing at least as many valid signatures of qualified electors of the state or the electoral district, as the case may be, as set forth by 25 P.S. § 2911(b).

3.  No candidate of the plaintiff political bodies shall be assessed costs under 25 P.S. § 2937.

4.  This Order is intended to replace the signature requirement imposed by 25 P.S. § 2911(b).  The defendants are enjoined from enforcing this signature requirement in conjunction with the objection procedure set forth in 25 P.S. § 2937 as applied to nomination

papers submitted by the plaintiffs Constitution Party of Pennsylvania, Green Party of

Pennsylvania and Libertarian Party of Pennsylvania and by their candidates for office.

     5.  All other provisions of the Pennsylvania Election Code that do not conflict with this

Order continue to apply to the candidates of the plaintiff political bodies.

**BY THE COURT:**

*/s/ Lawrence F. Stengel*
LAWRENCE F. STENGEL, C.J.

# EXHIBIT B

### MINOR POLITICAL PARTY AND POLITICAL BODY
### SIGNATURE REQUIREMENTS FOR STATEWIDE OFFICES
### GENERAL ELECTION - NOVEMBER 3, 2020

| Office | Signatures |
|---|---|
| President of the United States | 5,000 |
| Attorney General | 2,500 |
| Auditor General | 2,500 |
| State Treasurer | 2,500 |

*These signature requirements have been updated as a result of a federal distict court order that established new signature requirements for nomination papers filed by statewide candidates from the Constitution Party, the Green Party and the Libertarian Party.  See Order, *Constitution Party v. Cortés*, No. 12-2726, Doc. No. 115 (E.D. Pa. February 1, 2018) Because having different nomination requirements for different political bodies raises equal protection concerns under both the Federal and State Constitutions, and because other political bodies would likely be able to obtain relief similar to that already afforded to the *Constitution Party* plaintiffs, the Secretary of the Commonwealth has decided to apply the new signature requirements to all nomination papers submitted by statewide political body candidates.  However, notwithstanding the decision of the Secretary of the Commonwealth to apply the lower signature requirement to all nomination papers for all political bodies for statewide candidates, it remains possible that Individual qualified electors may file objections to nomination papers in court on the basis that the federal court order does not expressly apply to statewide political body candidates other than the three political bodies who brought the litigation.  In the event that objections to a nomination paper were filed by a qualified elector, the court would determine on its own authority whether to enforce the signature requirement imposed by section 951(b).

## MINOR POLITICAL PARTY AND POLITICAL BODY
## SIGNATURE REQUIREMENTS FOR REPRESENTATIVE IN CONGRESS
## GENERAL ELECTION - NOVEMBER 3, 2020

| District | Signatures Needed |
|---|---|
| 1 | 3,382 |
| 2 | 3,192 |
| 3 | 5,753 |
| 4 | 4,231 |
| 5 | 3,973 |
| 6 | 3,555 |
| 7 | 2,817 |
| 8 | 2,713 |
| 9 | 2,975 |
| 10 | 2,988 |
| 11 | 3,275 |
| 12 | 1,800 |
| 13 | 3,571 |
| 14 | 3,028 |
| 15 | 3,305 |
| 16 | 2,707 |
| 17 | 3,664 |
| 18 | 4,630 |

# MINOR POLITICAL PARTY AND POLITICAL BODY
## SIGNATURE REQUIREMENTS FOR SENATOR IN THE GENERAL ASSEMBLY
## GENERAL ELECTION - NOVEMBER 3, 2020

| District | Signatures Needed |
|----------|-------------------|
| 1 | 2,282 |
| 3 | 1,980 |
| 5 | 1,291 |
| 7 | 2,170 |
| 9 | 1,416 |
| 11 | 1,968 |
| 13 | 1,332 |
| 15 | 1,256 |
| 17 | 1,777 |
| 19 | 1,513 |
| 21 | 2,031 |
| 23 | 1,716 |
| 25 | 1,529 |
| 27 | 1,662 |
| 29 | 1,851 |
| 31 | 1,746 |
| 33 | 500 |
| 35 | 1,368 |
| 37 | 869 |
| 39 | 2,234 |
| 41 | 501 |
| 43 | 2,300 |
| 45 | 1,781 |
| 47 | 1,913 |
| 49 | 1,156 |

## MINOR POLITICAL PARTY AND POLITICAL BODY
## SIGNATURE REQUIREMENTS FOR REPRESENTATIVE IN THE GENERAL ASSEMBLY
## GENERAL ELECTION - NOVEMBER 3, 2020

| District | Signatures Needed | District | Signatures Needed | District | Signatures Needed |
|---|---|---|---|---|---|
| 1 | 300 | 41 | 340 | 81 | 312 |
| 2 | 300 | 42 | 479 | 82 | 309 |
| 3 | 406 | 43 | 314 | 83 | 300 |
| 4 | 348 | 44 | 307 | 84 | 364 |
| 5 | 362 | 45 | 420 | 85 | 300 |
| 6 | 355 | 46 | 316 | 86 | 324 |
| 7 | 432 | 47 | 326 | 87 | 371 |
| 8 | 325 | 48 | 300 | 88 | 323 |
| 9 | 300 | 49 | 300 | 89 | 392 |
| 10 | 322 | 50 | 300 | 90 | 382 |
| 11 | 300 | 51 | 300 | 91 | 319 |
| 12 | 362 | 52 | 300 | 92 | 391 |
| 13 | 300 | 53 | 300 | 93 | 361 |
| 14 | 326 | 54 | 327 | 94 | 316 |
| 15 | 308 | 55 | 300 | 95 | 300 |
| 16 | 371 | 56 | 353 | 96 | 307 |
| 17 | 349 | 57 | 322 | 97 | 370 |
| 18 | 300 | 58 | 300 | 98 | 312 |
| 19 | 359 | 59 | 370 | 99 | 300 |
| 20 | 441 | 60 | 382 | 100 | 300 |
| 21 | 400 | 61 | 354 | 101 | 311 |
| 22 | 300 | 62 | 300 | 102 | 360 |
| 23 | 453 | 63 | 304 | 103 | 309 |
| 24 | 507 | 64 | 300 | 104 | 308 |
| 25 | 300 | 65 | 326 | 105 | 316 |
| 26 | 300 | 66 | 341 | 106 | 300 |
| 27 | 391 | 67 | 317 | 107 | 300 |
| 28 | 367 | 68 | 323 | 108 | 351 |
| 29 | 332 | 69 | 381 | 109 | 300 |
| 30 | 345 | 70 | 322 | 110 | 300 |
| 31 | 412 | 71 | 300 | 111 | 325 |
| 32 | 458 | 72 | 300 | 112 | 342 |
| 33 | 300 | 73 | 393 | 113 | 334 |
| 34 | 425 | 74 | 300 | 114 | 300 |
| 35 | 304 | 75 | 435 | 115 | 300 |
| 36 | 384 | 76 | 300 | 116 | 300 |
| 37 | 371 | 77 | 300 | 117 | 368 |
| 38 | 401 | 78 | 379 | 118 | 319 |
| 39 | 300 | 79 | 303 | 119 | 300 |
| 40 | 375 | 80 | 358 | 120 | 334 |

# MINOR POLITICAL PARTY AND POLITICAL BODY
## SIGNATURE REQUIREMENTS FOR REPRESENTATIVE IN THE GENERAL ASSEMBLY
### GENERAL ELECTION - NOVEMBER 3, 2020

| District | Signatures Needed | District | Signatures Needed | District | Signatures Needed |
|---|---|---|---|---|---|
| 121 | 300 | 161 | 369 | 201 | 459 |
| 122 | 300 | 162 | 300 | 202 | 300 |
| 123 | 300 | 163 | 309 | 203 | 457 |
| 124 | 359 | 164 | 356 | | |
| 125 | 365 | 165 | 333 | | |
| 126 | 306 | 166 | 476 | | |
| 127 | 300 | 167 | 343 | | |
| 128 | 335 | 168 | 348 | | |
| 129 | 300 | 169 | 354 | | |
| 130 | 368 | 170 | 300 | | |
| 131 | 312 | 171 | 348 | | |
| 132 | 300 | 172 | 300 | | |
| 133 | 308 | 173 | 300 | | |
| 134 | 325 | 174 | 300 | | |
| 135 | 318 | 175 | 491 | | |
| 136 | 300 | 176 | 300 | | |
| 137 | 300 | 177 | 300 | | |
| 138 | 335 | 178 | 353 | | |
| 139 | 341 | 179 | 300 | | |
| 140 | 350 | 180 | 300 | | |
| 141 | 300 | 181 | 428 | | |
| 142 | 364 | 182 | 565 | | |
| 143 | 347 | 183 | 300 | | |
| 144 | 310 | 184 | 349 | | |
| 145 | 312 | 185 | 403 | | |
| 146 | 300 | 186 | 516 | | |
| 147 | 316 | 187 | 321 | | |
| 148 | 537 | 188 | 458 | | |
| 149 | 467 | 189 | 300 | | |
| 150 | 311 | 190 | 300 | | |
| 151 | 307 | 191 | 409 | | |
| 152 | 330 | 192 | 502 | | |
| 153 | 474 | 193 | 328 | | |
| 154 | 532 | 194 | 455 | | |
| 155 | 369 | 195 | 511 | | |
| 156 | 359 | 196 | 393 | | |
| 157 | 354 | 197 | 310 | | |
| 158 | 313 | 198 | 444 | | |
| 159 | 300 | 199 | 300 | | |
| 160 | 318 | 200 | 652 | | |

# EXHIBIT C



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF THE GOVERNOR

### PROCLAMATION OF DISASTER EMERGENCY

*March 6, 2020*

*WHEREAS, a novel coronavirus (now known as "COVID-19") emerged in Wuhan, China, began infecting humans in December 2019, and has since spread to 89 countries, including the United States; and*

*WHEREAS, the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared COVID-19 a "public health emergency of international concern," and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency; and*

*WHEREAS, the Commonwealth of Pennsylvania ("Commonwealth") has been working in collaboration with the CDC, HHS, and local health agencies since December 2019 to monitor and plan for the containment and subsequent mitigation of COVID-19; and*

*WHEREAS, on February 1, 2020, the Commonwealth's Department of Health activated its Department Operations Center at the Pennsylvania Emergency Management Agency's headquarters to conduct public health and medical coordination for COVID-19 throughout the Commonwealth; and*

*WHEREAS, on March 4, 2020, the Director of the Pennsylvania Emergency Management Agency ordered the activation of its Commonwealth Response Coordination Center in support of the Department of Health's Department Operations Center, to maintain situational awareness and coordinate the response to any potential COVID-19 impacts across the Commonwealth; and*

*WHEREAS, as of March 6, 2020, there are 233 confirmed and/or presumed positive cases of COVID-19 in the United States, including 2 presumed positive cases in the Commonwealth; and*

*WHEREAS, while it is anticipated that a high percentage of those affected by COVID-19 will experience mild influenza-like symptoms, COVID-19 is a disease capable of causing severe symptoms or loss of life, particularly to older populations and those individuals with pre-existing conditions; and*

*WHEREAS, it is critical to prepare for and respond to suspected or confirmed cases in the Commonwealth and to implement measures to mitigate the spread of COVID-19; and*

*WHEREAS, with 2 presumed positive cases in the Commonwealth as of March 6, 2020, the possible increased threat from COVID-19 constitutes a threat of imminent disaster to the health of the citizens of the Commonwealth; and*

*WHEREAS, this threat of imminent disaster and emergency has the potential to cause significant adverse impacts upon the population throughout the Commonwealth; and*

*WHEREAS, this threat of imminent disaster and emergency has already caused schools to close, and will likely prompt additional local measures, including affected county and municipal governments to declare local disaster emergencies because of COVID-19; and*

*WHEREAS, this threat of imminent disaster and emergency situation throughout the Commonwealth is of such magnitude and severity as to render essential the Commonwealth's supplementation of emergency resources and mutual aid to the county and municipal governments of this Commonwealth and to require the activation of all applicable state, county, and municipal emergency response plans.*

*NOW THEREFORE, pursuant to the provisions of Subsection 7301(c) of the Emergency Management Services Code, 35 Pa. C.S. § 7101, et seq., I do hereby proclaim the existence of a disaster emergency throughout the Commonwealth.*

*FURTHER, I hereby authorize the Pennsylvania Emergency Management Agency Director or his designee, to assume command and control of all statewide emergency operations and authorize and direct that all Commonwealth departments and agencies utilize all available resources and personnel as is deemed necessary to cope with this emergency situation.*

*FURTHER, I hereby transfer up to $5,000,000 in unused appropriated funds to the Pennsylvania Emergency Management Agency for Emergency Management Assistance Compact expenses related to this emergency, to be decreased as conditions require, pursuant to the provisions of section 7604(a) of the Emergency Management Services Code, 35 Pa. C.S. § 7604(a). In addition, I hereby transfer up to $20,000,000 in unused appropriated funds, to be decreased as conditions require, to the Pennsylvania Emergency Management Agency pursuant to section 1508 of the Act of April 9, 1929 (P.L.343, No. 176) (the Fiscal Code), 72 P.S. § 1508. The aforementioned funds shall be used for expenses authorized and incurred related to this emergency. These funds shall be credited to a special account established by the Office of the Budget. I hereby direct that any funds transferred herein that remain unused after all costs related to this emergency have been satisfied shall be returned to the General Fund.*

*FURTHER, All Commonwealth agencies purchasing supplies or services in response to this emergency are authorized to utilize emergency procurement procedures set forth in Section 516 of the Commonwealth Procurement Code, 62 Pa. C.S. § 516. This Proclamation shall serve as the written determination of the basis for the emergency under Section 516.*

*FURTHER, I hereby suspend the provisions of any regulatory statute prescribing the procedures for conduct of Commonwealth business, or the orders, rules or regulations of any Commonwealth agency, if strict compliance with the provisions of any statute, order, rule or regulation would in any way prevent, hinder, or delay necessary action in coping with this emergency. Commonwealth agencies may implement emergency assignments without regard to procedures required by other laws, except mandatory constitutional requirements, pertaining to performance of public work, entering into contracts, incurring of obligations, employment of temporary workers, rental of equipment, purchase of supplies and materials, and expenditures of public funds.*

*FURTHER, pursuant to the powers vested in me by the Constitution and laws of the Commonwealth pursuant to 51 Pa. C.S. § 508, I hereby authorize the Adjutant General of Pennsylvania to place on state active duty for the duration of the emergency disaster proclamation, such individuals and units of the Pennsylvania National Guard, for missions designated by the Pennsylvania Emergency Management Agency, as are needed to address the consequences of the aforementioned emergency.*

*FURTHER, I authorize the Commissioner of the Pennsylvania State Police to use all available resources and personnel in whatever manner he deems necessary during this emergency to assist the actions of the Pennsylvania Emergency Management Agency in addressing the consequences of the emergency.*

*FURTHER, I hereby authorize the Secretary of the Pennsylvania Department of Health, in her sole discretion, to suspend or waive any provision of law or regulation which the Pennsylvania Department of Health is authorized by law to administer or enforce, for such length of time as may be necessary to respond to this emergency.*

*FURTHER, I hereby authorize the Secretary of the Pennsylvania Department of Education, in his sole discretion, to suspend or waive any provision of law or regulation which the Pennsylvania Department of Education is authorized by law to administer or enforce, for such length of time as may be necessary to respond to this emergency.*

*FURTHER, if investigations made on my behalf determine that the Commonwealth needs greater flexibility in the application of state and federal motor carrier regulations to accommodate truck drivers involved in emergency activities during this emergency, I hereby direct the Commonwealth Department of Transportation to waive or suspend any laws or federal or state regulations related to the drivers of commercial vehicles.*

*FURTHER, I hereby direct that the applicable emergency response and recovery plans of the Commonwealth, counties, municipalities and other entities be activated as necessary and that actions taken to implement those plans be coordinated through the Pennsylvania Emergency Management Agency.*

*STILL FURTHER, I hereby urge the governing bodies and executive officers of all political subdivisions affected by this emergency to act as necessary to meet the current exigencies as legally authorized under this Proclamation, namely, by the employment of temporary workers, by the rental of equipment, and by entering into such contracts and agreements as may be required to meet the emergency, all without regard to those time consuming procedures and formalities normally prescribed by law, mandatory constitutional requirement excepted.*



*GIVEN under my hand and the Seal of the Governor, at the City of Harrisburg, this sixth day of March in the year of our Lord two thousand twenty, and of the Commonwealth the two hundred and forty fourth.*

**TOM WOLF**
*Governor*

# EXHIBIT D



COMMONWEALTH OF PENNSYLVANIA

OFFICE OF THE GOVERNOR

### ORDER OF

### THE GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA REGARDING THE CLOSURE OF ALL BUSINESSES THAT ARE NOT LIFE SUSTAINING

*WHEREAS,* the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a novel coronavirus ("COVID-19") a "public health emergency of international concern," and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency; and

*WHEREAS,* as of March 6, 2020, I proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c); and

*WHEREAS,* I am charged with the responsibility to address dangers facing the Commonwealth of Pennsylvania that result from disasters. 35 Pa. C.S. § 7301(a); and

*WHEREAS,* in addition to general powers, during a disaster emergency I am authorized specifically to control ingress and egress to and from a disaster area and the movement of persons within it and the occupancy of premises therein; and suspend or limit the sale, dispensing, or transportation of alcoholic beverages, firearms, and combustibles. 35 Pa. C.S. § 7301(f); and

*WHEREAS,* in executing the extraordinary powers outlined above, I am further authorized during a disaster emergency to issue, amend and rescind executive orders, proclamations and regulations and those directives shall have the force and effect of law. 35 Pa. C.S. § 7301(b); and

*WHEREAS,* in addition to my authority, my Secretary of Health has the authority to determine and employ the most efficient and practical means for the prevention and suppression of disease. 71 P.S. § 532(a), 71 P.S. 1403(a); and

*WHEREAS,* these means include isolation, quarantine, and any other control measure needed. 35 P.S. § 521.5.

*NOW THEREFORE,* pursuant to the authority vested in me and my Administration by the laws of the Commonwealth of Pennsylvania, I do hereby ORDER and PROCLAIM as follows:

*Section 1:*     *Prohibition on Operation of Businesses that are not Life Sustaining*

All prior orders and guidance regarding business closures are hereby superseded.

No person or entity shall operate a place of business in the Commonwealth that is not a life sustaining business regardless of whether the business is open to members of the public. This prohibition does not apply to virtual or telework operations (e.g., work from home), so long as social distancing and other mitigation measures are followed in such operations.

Life sustaining businesses may remain open, but they must follow, at a minimum, the social distancing practices and other mitigation measures defined by the Centers for Disease Control to protect workers and patrons. A list of life sustaining businesses that may remain open is attached to and incorporated into this Order.

*Enforcement actions will be taken against non-life sustaining businesses that are out of compliance effective March 21, 2020, at 12:01 a.m.*

Section 2:     *Prohibition on Dine-In Facilities including Restaurants and Bars*

*All restaurants and bars previously have been ordered to close their dine-in facilities to help stop the spread of COVID-19.*

*Businesses that offer carry-out, delivery, and drive-through food and beverage service may continue, so long as social distancing and other mitigation measures are employed to protect workers and patrons. Enforcement actions will be taken against businesses that are out of compliance effective March 19, 2020, at 8 p.m.*

Section 3:     *Effective Date and Duration*

*This order is effective immediately and will remain in effect until further notice.*

*GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this nineteenth day of March two thousand twenty, the year of the commonwealth the two hundred and forty-fourth.*

*TOM WOLF*
*Governor*

# EXHIBIT E



COMMONWEALTH OF PENNSYLVANIA

OFFICE OF THE GOVERNOR

### ORDER OF

### THE GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA

### FOR INDIVIDUALS TO STAY AT HOME

*WHEREAS, the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a novel coronavirus ("COVID-19") a "public health emergency of international concern," and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency; and*

*WHEREAS, as of March 6, 2020, I proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c); and*

*WHEREAS, I am charged with the responsibility to address dangers facing the Commonwealth of Pennsylvania that result from disasters. 35 Pa. C.S. § 7301(a); and*

*WHEREAS, in addition to general powers, during a disaster emergency I am authorized specifically to control ingress and egress to and from a disaster area and the movement of persons within it and the occupancy of premises therein. 35 Pa. C.S. § 7301(f); and*

*WHEREAS, in executing the extraordinary powers outlined above, I am further authorized during a disaster emergency to issue, amend and rescind executive orders, proclamations and regulations and those directives shall have the force and effect of law. 35 Pa. C.S. § 7301(b); and*

*WHEREAS, in addition to my authority, my Secretary of Health has the authority to determine and employ the most efficient and practical means for the prevention and suppression of disease. 71 P.S. § 532(a), 71 P.S. 1403(a); and*

*WHEREAS, these means include isolation, quarantine, and any other control measure needed. 35 P.S. § 521.5.*

*NOW THEREFORE, pursuant to the authority vested in me and my Administration by the laws of the Commonwealth of Pennsylvania, I do hereby ORDER and PROCLAIM as follows:*

Section 1: Order to Stay at Home

*All individuals residing in Allegheny County, Bucks County, Chester County, Delaware County, Monroe County, Montgomery County, and Philadelphia County are ordered to stay at home except as needed to access, support, or provide life sustaining business, emergency, or government services. For employees of life sustaining businesses that remain open, the following child care services may remain open: group and family child care providers in a residence; child care facilities operating under a waiver granted by the Department of Human Services Office of Child Development and Early Learning; and, part-day school age programs operating under an exemption from the March 19, 2020 business closure Orders.*

*A list of life sustaining businesses that remain open is attached to and incorporated into this Order. In addition, businesses that are permitted to remain open include those granted exemptions prior to or following the issuance of this Order.*

*Individuals leaving their home or place of residence to access, support, or provide life sustaining services for themselves, another person, or a pet must employ social distancing practices as defined by the Centers for Disease Control and Prevention. Individuals are permitted to engage in outdoor activities; however, gatherings of individuals outside of the home are generally prohibited except as may be required to access, support or provide life sustaining services as outlined above.*

*Enforcement of this Order will commence at 8:00 PM on Monday, March 23, 2020.*

*Section 2: Effective Date and Duration*

*This order is effective immediately and will remain in effect for a period of two weeks, specifically until April 6, 2020.*



*GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this twenty-third day of March two thousand twenty, the year of the commonwealth the two hundred and forty-fourth.*

**TOM WOLF**
**Governor**

# EXHIBIT  F



March 25, 2020

**Pennsylvania Provides Limited Suspension of In-person Regulatory Requirements for Notaries for Real Estate Transactions**

The Department temporary and limited suspension of 57 Pa.C.S. § 306, which requires physical presence of notaries.

For personal real estate transactions, the Governor approved a temporary notarial rule suspension be granted only for real estate transactions that were already in process (e.g. agreement of sale completed for residential property and only mortgage closing needs to take place). This limited suspension, with the safeguards described below, will enable real estate professionals to complete transactions begun prior to the disaster declaration, but protect Pennsylvanians currently sheltering in place by limiting visitors to private homes and enabling real estate professionals to comply with the Governor's directive regarding essential vs. non-essential businesses.

For all commercial real estate transactions, the Governor approved a temporary suspension of 57 Pa.C.S. § 306 in conjunction with the safeguards described below, for both transactions that were already in process as well as new transactions during the emergency period. These suspensions will allow transactions that may be needed to assist in responding to this public health exigency, including possible needs for emergency allocation or transfer of property during this disaster declaration, while also protecting Pennsylvanians and enabling real estate professionals to comply with the Governor's directive regarding essential vs. non-essential businesses.

Notaries must execute all notarial acts (including acknowledgments) in accordance with all other requirement of the Revised Uniform Law on Notarial Acts (RULONA).

The safeguards contemplated by the ULC and the recent RON legislation (including multilayers of identity verification, use of tamper-evident technology and an audio-video recording of the notarial act) must still be required.

<u>All notaries who are using audio-visual technology as an alternative to personal appearance must:</u>

1) <u>become an approved Pennsylvania electronic notary (free application)</u>
2) <u>use an e-notary solution already approved by the Department that offers remote notarization technology. A list of the approved remote online notarization vendors can be found on the Department of State's Electronic/Remote Notarization webpage</u>
3) <u>indicate in the notary certificate that the notarial act was performed by means of communication technology. The following statement will satisfy that requirement – "This notarial act involved the use of communication technology."</u>

# EXHIBIT G



COMMONWEALTH OF PENNSYLVANIA

OFFICE OF THE GOVERNOR

*ORDER OF*

*THE GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA*

*FOR INDIVIDUALS TO STAY AT HOME*

*WHEREAS, the World Health Organization and the Centers for Disease Control and Prevention ("CDC") have declared a novel coronavirus ("COVID-19") a "public health emergency of international concern," and the U.S. Department of Health and Human Services ("HHS") Secretary has declared that COVID-19 creates a public health emergency; and*

*WHEREAS, as of March 6, 2020, I proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c); and*

*WHEREAS, I am charged with the responsibility to address dangers facing the Commonwealth of Pennsylvania that result from disasters. 35 Pa. C.S. § 7301(a); and*

*WHEREAS, in addition to general powers, during a disaster emergency I am authorized specifically to control ingress and egress to and from a disaster area and the movement of persons within it and the occupancy of premises therein. 35 Pa. C.S. § 7301(f); and*

*WHEREAS, in executing the extraordinary powers outlined above, I am further authorized during a disaster emergency to issue, amend, and rescind executive orders, proclamations, and regulations and those directives shall have the force and effect of law. 35 Pa. C.S. § 7301(b); and*

*WHEREAS, in addition to my authority, my Secretary of Health has the authority to determine and employ the most efficient and practical means for the prevention and suppression of disease. 71 P.S. § 532(a), 71 P.S. 1403(a); and*

*WHEREAS, these means include isolation, quarantine, and any other control measure needed. 35 P.S. § 521.5; and*

*WHEREAS, I previously issued an Order limited to specified counties directing "Individuals to Stay at Home" on March 23, 2020, and amended March 24, March 25, March 27, March 28, March 30, and March 31, 2020; and*

*WHEREAS, as of April 1, 2020, the Commonwealth of Pennsylvania has 5,805 positive cases of COVID-19 in sixty counties and reports 74 deaths from the virus.*

*NOW THEREFORE, pursuant to the authority vested in me and my Administration by the laws of the Commonwealth of Pennsylvania, I do hereby ORDER and PROCLAIM as follows:*

*Section 1: Order to Stay at Home*

*All individuals residing in the Commonwealth are ordered to stay at home except as needed to access, support, or provide life-sustaining business, emergency, or government services. For employees of life-sustaining businesses that remain open, the following child care services may remain open: group and family child care providers in a residence; child care facilities operating under a waiver granted by the Department of Human Services Office of Child Development and Early Learning; and, part-day school age programs operating under an exemption from the March 19, 2020, business closure Orders.*

*A list of life-sustaining businesses that remain open is attached to and incorporated into this Order. In addition, businesses that are permitted to remain open include those granted exemptions prior to or following the issuance of this Order.*

*Individuals leaving their home or place of residence to access, support, or provide life-sustaining services for themselves, another person, or a pet must employ social distancing practices as defined by the Centers for Disease Control and Prevention. Individuals are permitted to engage in outdoor activities; however, gatherings of individuals outside of the home are generally prohibited except as may be required to access, support, or provide life-sustaining services as outlined above.*

*Enforcement of this Order will commence immediately for all counties covered under my prior Order directing "Individuals to Stay at Home" first issued March 23, 2020, as amended. Enforcement of this Order will commence at 8:00 PM Wednesday, April 1, 2020, for all other counties.*

*Section 2: Effective Date and Duration*

*This order is effective immediately and will remain in effect until April 30, 2020. This Order supersedes all previous Orders directing "Individuals to Stay at Home."*

*GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this first day of April two thousand twenty, the year of the commonwealth the two hundred and forty-fourth.*

**TOM WOLF**
*Governor*

# EXHIBIT H



COMMONWEALTH OF PENNSYLVANIA

OFFICE OF THE GOVERNOR

### *AMENDMENT TO ORDER OF*
### *THE GOVERNOR OF THE COMMONWEALTH OF PENNSYLVANIA*
### *FOR INDIVIDUALS TO STAY AT HOME*

*WHEREAS, as the COVID-19 disaster emergency in the Commonwealth continues, my Administration has developed a measured and strategic approach to allowing Pennsylvanians to return to work safely in a manner designed to prevent a resurgence of the virus; and*

*WHEREAS, this strategic phased reopening of the Commonwealth will be done in the most effective, efficient, and risk-averse method possible to balance our return to economic stability, while at the same time continuing to keep Pennsylvanians safe by controlling the spread of disease; and*

*WHEREAS, it is necessary to extend the requirements in my Stay At Home Order during the phased reopening process, with the recognition that such requirements may be suspended for specific counties as part of the gradual and strategic approach to reopening the Commonwealth; and*

*WHEREAS, as of May 7, 2020, the Commonwealth of Pennsylvania has 52,915 persons who have tested positive or meet the requirements as probable cases for COVID-19 in all sixty-seven counties and reports 3,416 deaths from the virus.*

*NOW THEREFORE, I hereby amend my Order directing "Individuals to Stay at Home" dated April 1, 2020, as amended.*

*The first sentence of Section 2 is amended to read as follows:*

*This Order is effective immediately and will remain in effect through June 4, 2020.*

*The Order remains unchanged in every other respect.*



*GIVEN under my hand and the Seal of the Governor, at the city of Harrisburg, on this seventh day of May two thousand twenty, the year of the commonwealth the two hundred and forty-fourth.*

*TOM WOLF*
*Governor*